## WESTERN LUMBER CO. v. WILLIS.

(Circuit Court of Appeals, Ninth Circuit. March 7, 1908.)

No. 1,466.

1. CONTRACTS—INTERPRETATION—RELATION OF PARTIES.

In the interpretation of a contract, the court may consider the relation of the parties, their connection with the subject-matter of the contract, and the circumstances under which it was made, and determine the intention from the entire agreement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 752.]

**2. SAME—IMPOSSIBILITY OF PERFORMANCE.**

Plaintiff agreed to point out public lands to defendant's timber inspector who would estimate the timber, whereupon defendant would acquire it from the government by selecting the same in lieu of forest reservation lands after acquiring the right to make such selection by purchase from persons holding forest reserve lands as authorized by Act Cong. June 4, 1897, c. 2, 30 Stat. 36, and would pay plaintiff $1 per 1,000 feet of timber on land so pointed out, examined, and estimated, less the cost of purchasing the reservation scrip necessary to acquire such lands. *Held* that, as such act constituted a standing offer by the government to exchange any of its lands vacant and open to settlement for a like quantity of similar land within a forest reservation, such contract was not objectionable as impossible of performance; the only lands which defendant could acquire by exchange under such act being lands vacant and open to settlement, the title of any of which defendant could acquire by the exchange of title to forest reserve lands.

**3. SAME—ILLEGALITY—PUBLIC POLICY.**

A contract by which plaintiff agreed to point out timber lands belonging to the United States, subject to exchange for reservation lands and which defendant agreed to, procure by purchasing the title to reservation lands and exchange the same for the lands pointed out, was not illegal as against public policy because the right of exchange created by Act Cong. June 4, 1897, c. 2, 30 Stat. 36, was not assignable; no assignments being contemplated by such contract.

**4. FRAUDS, STATUTE OF—"CONTRACTS FOR BROKER'S SERVICES."**

A contract for plaintiff's services in the discovery and pointing out of public timber lands to defendant's timber inspector, who was to estimate the timber on such lands, and procure title thereto in defendant by exchanging forest reserve lands therefor, and pay plaintiff a certain sum per 1,000 feet of timber on the land, less the cost of reservation scrip necessary to acquire the lands, was not a contract for brokers' services in purchasing land within the Montana Code, requiring contracts for broker's services to be in writing.

**5. MASTER AND SERVANT—ACTION FOR COMPENSATION.**

Where a complaint for timber cruiser's services alleged that plaintiff was to be paid on certain terms for all land that he should discover and point out to defendant's timber inspector, which land was to be acquired by defendant in lieu of forest reserve lands under Act Cong. June 4, 1897, c. 2, 30 Stat. 36, and Act June 6, 1900, c. 791, 31 Stat. 614, which limited the land subject to such exchange to vacant nonmineral lands open to settlement, plaintiff's testimony that the lands included were those open to entry excluding unsurveyed lands, mineral lands, Northern Pacific Railroad lands, lands appropriated or selected by others, lands not subject to entry under the timber and stone act, and lands not patented to the defendant, did not create a variance between the complaint and the proof.

**6. SAME.**

Where plaintiff contracted to point out public timber lands to defendant's timber inspector who was to estimate the timber thereon and pay plaintiff $1 per 1,000, less the cost of reservation scrip necessary to be purchased in order to obtain the lands pointed out by exchange, the contract excluded lands not accessible or not sufficiently timbered to justify their exchange, and hence there was no variance between the contract pleaded and plaintiff's testimony that lands that were not estimated by defendant's timber inspector, and which were not accessible or not sufficiently timbered to justify their purchase, were to be excluded.

**7. SAME—QUESTION FOR JURY—PRESUMPTIONS.**

In an action for breach of a timber cruiser's contract only covering lands sufficiently timbered to justify exchange for reservation lands, whether certain tracts were in fact excluded for failure to contain a sufficient quantity of timber was for the jury, and it would be presumed, when the jury determined that a tract was excluded, it also excluded the testimony relating to the timber thereon.

**8. SAME—CONTRACT—BREACH BY DEFENDANT.**

Where a timber cruiser's contract provided that defendant should pay $1 per 1,000 for timber on land pointed out by plaintiff which defendant would acquire by exchange for reservation scrip, less the cost of purchasing the scrip, etc., plaintiff was entitled to recover for lands pointed out which were subsequently patented to another because of defendant's failure to obtain title from the United States by reason of its delay and without fault on plaintiff's part.

**9. SAME—EVIDENCE.**

Where a timber cruiser's contract required him to point out public timber lands, subject to entry to defendant's timber inspector, whereupon such inspector would estimate the timber on the lands according to which estimate plaintiff was to receive payment, and such inspector, though a witness, testified that he had lost his field book, and had no estimates made by him in 1900 which had been sent to defendant's agent who testified that he did not know what had become of them, plaintiff was entitled to prove by another estimator who estimated the timber on the land in that year for another that the land averaged 400,000 feet to each 40-acre tract.

In Error to the Circuit Court of the United States for the District of Montana.

John M. Evans, W. M. Bickford, George F. Shelton, and Charles A. Ruggles, for plaintiff in error.

Elmer E. Hershey, Thomas C. Marshall, and Henry C. Stiff, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. This was an action at law by the defendant in error (plaintiff below) to recover from the plaintiff in error (defendant below) money alleged to be due upon a contract. The contract set forth in the complaint is as follows:

"That on the 1st day of January, 1900, the said defendant made and entered into a contract with the said plaintiff, whereby the said defendant agreed with the said plaintiff that all lands that he would discover and point out to one G. W. Sparks, a timber inspector in the employ of said defendant, that the said defendant would have the said Sparks estimate the said timber on such lands, and that all lands so discovered and pointed out and indicated to the said Sparks, timber inspector of the defendant, aforesaid, the said defendant would acquire and purchase said land from the government of the United States, by selecting the same in lieu of forest reservation lands, the right to make which selections the said defendant would acquire by purchase from divers and sundry persons of forest reserve lands, said location or selection being under the act of June 4, 1897, commonly known and what is called forest reservation scrip. and that the said defendant would pay to the said plaintiff one ($1.00) dollar per thousand feet for every thousand feet of timber on lands so pointed out, examined and estimated by the said Sparks. less the cost of purchasing the scrip necessary to select, locate and acquire said lands."

The breach of the contract, as charged in the complaint, is as follows:

"That, pursuant to said contract, this plaintiff began work for the said defendant in January, 1900, and in and about the performance of the contract as agreed to be done and performed by him, and in pursuance thereof discovered, pointed out, and indicated to the said Sparks lands meeting all the requirements of the said contract, and the same were inspected and estimated by the said Sparks and the timber found to be standing thereon amounted to seventy-three million five hundred thousand (73,500,000) feet, which at one

($1.00) dollar per 1,000 feet, would amount to seventy-three thousand five hundred ($73,500) dollars; that the cost of scrip so-called, or, in fact, forest reservation lands, necessary to be relinquished to acquire the above timber lands at the time was and is forty-four thousand one hundred ($44,100) dollars, leaving a net balance due to the said plaintiff on account thereof of the sum of twenty-nine thousand four hundred ($29,400) dollars."

The defendant in its amended answer denied the existence of any contract between the plaintiff and the defendant as set forth in the complaint; denied that the plaintiff had done or performed any work under any such contract for the defendant, or that there was any amount due or owing from the defendant to the complainant as alleged in the complaint. The statute of limitations was also pleaded as a separate defense. In the reply the plaintiff denied the affirmative allegations of the amended answer.

The case was tried by the court with a jury and resulted in a verdict for the plaintiff in the sum of $3,650. The case is here upon writ of error.

Before the introduction of testimony, counsel for the defendant objected to the introduction of evidence upon the ground that the complaint did not state a cause of action against the defendant. The objection was overruled, and the ruling of the court is assigned as error. It is contended that the contract alleged in the complaint was upon its face impossible of performance, and therefore void, for the reason that the consideration of the contract was to be determined exclusively upon the basis of the purchase by the defendant from the government of the United States of all lands pointed out by the plaintiff, and that, as the defendant could not compel the United States to sell all of the lands pointed out by the plaintiff, the contract was impossible of execution. In the interpretation of a contract, the court may consider the relations of the parties, their connection with the subject-matter of the contract, and the circumstances under which it was made. Rock Island Ry. Co. v. Rio Grande R. R., 143 U. S. 596, 609, 12 Sup. Ct. 479, 36 L. Ed. 277. In construing a contract, the intention is to be collected, not from detached parts of the contract, but from the whole of it. Canal Co. v. Hill, 15 Wall. 94, 103, 21 L. Ed. 64; 9 Cyc. 579. The method of procedure which the defendant was to pursue in purchasing from the government the lands pointed out by the plaintiff is stated in the contract set forth in the complaint. The lands were to be purchased from the government by selecting the same in lieu of forest reserve lands, and the right to make such selections the defendant was to acquire by the purchase of lands from the owners of forest reserve lands. The exchange was to be made under Act June 4, 1897, c. 2, 30 Stat. 36, which reads:

"That in cases in which a tract covered by * * * a patent is included within the limits of a public forest reservation, the settler or owner thereof may, if he desires to do so, relinquish the tract to the government, and may select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent; and no charge shall be made in such cases for making the entry of record or issuing the patent to cover the tract selected."

We find this act to be a standing offer on the part of the government to exchange any of its land that is vacant and open to settle-

ment for like quantity of similar land within a forest reservation for which it had previously issued a patent. Olive Land & Development Co. v. Olmstead (C. C.) 103 Fed. 568, 573; Cosmos Exploration Company v. Gray Eagle Oil Co. (C. C.) 104 Fed. 20, 40–41. There is also a provision relating to the terms upon which lands vacant and open to settlement may be exchanged for an unperfected bona fide claim within a forest reservation, but that provision has no bearing in this case. Manifestly the only lands which the defendant could acquire by exchange with the United States under the act of June 4, 1897, were lands of the United States that were vacant and open to settlement; and the title to all or any of such lands the defendant could acquire by the exchange of title to forest reserve lands. The contract in this respect was not only possible of performance, but the United States invited all persons holding title to the lands within forest reserves to come forward and exchange such title for title to any lands that it might have elsewhere vacant and open to settlement. It was the policy of the government to make such exchanges that the forest reserves might be free from occupation by settlers; and the services which the plaintiff contracted to perform in discovering and pointing out lands of the United States vacant and open to settlement were to be rendered for the purpose of enabling defendant to make selections of such lands to be received in exchange for the title to forest reserve lands. There is certainly nothing in such a contract legally impossible of performance.

It is further objected that the contract is illegal as being against public policy, and therefore void. It is said in support of this objection that the right created by the act of June 4, 1897, is a personal right, and is not assignable. Decisions of the Secretary of the Interior are referred to as establishing this rule. John K. McCormack, 32 Land Dec. Dep. Int. 578; Albert L. Bishop, 33 Land Dec. Dep. Int. 139; Heirs of George Liebes, 33 Land Dec. Dep. Int. 458. But the contract under consideration does not provide that the defendant shall acquire the title to lands of the United States pointed out by the plaintiff by the exchange of forest reserve lands which it is to acquire by assignment. On the contrary, it is specifically provided that the defendant is to acquire the forest reserve lands by purchase. It was to become the owner of the lands with full title, and such lands were to be exchanged in one transaction for the full title of lands of the United States elsewhere vacant and open to settlement. The act of June 4, 1897, does not provide that the owner of lands in forest reserve may have a floating right to select lands elsewhere, or that there shall be issued to him a certificate of a right of selection. No scrip in any form is issued by the United States in exchange for title to forest reserve lands. The Interior Department, in the execution of this law, has required from the beginning that a relinquishment by the owner of forest reserve lands and a selection by him covering all the relinquished land shall be presented together, and the matter disposed of as a single transaction. The contract in terms referred to such a transaction, and was therefore legal.

It is next objected that the contract was for the purchase of land, and that, in order to authorize a person to act as agent for another in

purchasing land, the contract, under the Civil Code of Montana, must be in writing. The contract was for services to be rendered by the plaintiff in the discovery and pointing out of lands to a timber inspector who was to estimate the timber on such lands. The plaintiff was in no sense employed as an agent or broker to negotiate for the purchase of the forest reserve lands, nor was he employed to negotiate with the officers of the United States for the exchange of such lands for lands of the United States. This was the business of the defendant. It was to acquire the forest reserve lands by purchase, and then to exchange such lands for lands vacant and open to settlement discovered and pointed out by the plaintiff. The plaintiff did not undertake to bring together the defendant and the owners of forest reserve lands, nor the defendant and the officers of the United States with respect to the transaction mentioned in the contract, nor did he undertake to render any service in the purchase and exchange of titles. His services, as he stated, were confined to the discovery and pointing out of lands to defendant's timber inspector.

It is next objected that there is a fatal variance between the contract as set forth in the complaint and the contract as described by the plaintiff's testimony. This objection is based upon the provision of the contract alleged in the complaint that the plaintiff was to be paid upon terms named for "all land that he would discover and point out to one G. W. Sparks, a timber inspector then in the employ of the said defendant." In plaintiff's testimony he stated that the lands included in the contract were those that were open to entry, and he excluded unsurveyed lands, mineral lands, Northern Pacific Railroad lands, lands appropriated or selected by others, lands that were not subject to entry under the timber and stone act, and lands that were not patented to the defendant. But the contract set forth in the complaint had a further provision identifying the land to be acquired by the defendant as lands to be selected in lieu of forest reserve lands under Act June 4, 1897, c. 2, 30 Stat. 36. By a subsequent act, approved June 6, 1900 (31 Stat. 614, c. 791), it was provided that all selections of land in lieu of a tract covered by an unperfected bona fide claim, or by a patent, included within a public reservation, as provided in the act of June 4, 1897, should be confined to vacant surveyed nonmineral public lands which are subject to homestead entry, not exceeding in area the tract covered by such claim or patent, provided that nothing in the amendatory act should be construed to affect the rights of those who previous to October 1, 1900, should have delivered to the United States deeds for lands within forest reservations and made application for specific tracts of lands in lieu thereof. The act of June 4, 1897, as amended, plainly excluded the lands described by the plaintiff in his testimony as not within the terms of his contract. And, as the lands described by plaintiff as being excluded from the contract were not vacant lands open to settlement under the act of June 4, 1897, or the amendatory act of June 6, 1900, there was no variance between the contract as alleged in the complaint and the contract as described by plaintiff in his testimony.

It is further objected that the plaintiff in his testimony excluded lands that were not estimated by the timber inspector, lands that were not accessible, and lands that were not sufficiently valuable for the timber standing thereon to warrant their purchase, and that there was a variance in this respect between the contract set forth in the complaint and the contract described by the plaintiff in his testimony. The contract as set forth in the complaint, interpreted reasonably and as a whole, also excludes such lands. The lands were to be discovered and pointed out by the plaintiff to a timber inspector who was to estimate the timber on such lands. Manifestly lands upon which there was no timber were not to be inspected, and were therefore not within the contract. But the fact that lands were discovered and pointed out by the plaintiff and were timber lands of the United States vacant and open to settlement did not necessarily bring them within the terms of the contract. They were to be selected by the defendant, and it was to pay the plaintiff, for services in discovering and pointing out such lands, $1 per 1,000 feet of timber on such lands examined and estimated by the timber inspector, less the cost of purchasing the forest reserve lands necessary to locate and acquire said lands. If lands discovered and pointed out by the plaintiff did not have an estimated quantity of timber sufficient to pay these expenses, plaintiff's services would be idle and useless and without any compensation. It is therefore clearly within the terms of the contract that the lands plaintiff would discover and point out should be estimated by the inspector, that they were to be accessible lands, and lands sufficiently valuable for the timber standing thereon to warrant their purchase. It is also equally clear that lands that did not come within these requirements were excluded from the terms of the contract as set forth in the complaint. There is, therefore, no variance between the contract and plaintiff's testimony in this respect.

A number of objections are made that testimony was admitted as to the amount of timber standing upon certain tracts of land which it is claimed by the defendant were not included in the contract. But whether such lands were in fact excluded from the contract was a question of fact for the jury to determine from the testimony, and this testimony was directed to specific subdivisions of the various sections of land, as was also the testimony concerning the standing timber on such subdivisions. The presumption, therefore, is that, when the jury determined that a tract of land was excluded from the contract, it also excluded the testimony relating to the timber on such lands.

It is objected that testimony was admitted with respect to the timber standing on certain sections of land discovered and pointed out by the plaintiff to defendant's timber inspector, but selected by one Daly for a rival corporation, and for which Daly obtained patent from the government. This testimony was admitted on the claim of plaintiff that defendant had an opportunity to acquire the title to these lands between the time they were pointed out by the plaintiff and their selection by Daly, and that it was no fault of the plaintiff that defendant failed to secure title to these lands. The plaintiff claimed that, having performed his part of the contract, these lands were included within its terms. The question was one of fact for the jury, and the court

properly submitted it to the jury for determination. The claim of the defendant that the lands were unconditionally excluded from the terms of the contract because no patent was obtained by the defendant for the lands disregards the question of fact whether the defendant had used due diligence in proceeding to obtain a patent for the lands.

It is further objected that under the contract the estimate of Timber Inspector Sparks as to the quantity of timber on the several tracts of land inspected by him was conclusive; that notwithstanding this provision of the contract the court admitted the testimony of one Vogel as to the amount of timber on certain tracts of land selected by Daly, and the court further informed the jury in its instructions that Vogel placed the average upon the Daly selections at 400,000 feet to 40 acres, and that such estimate might be used by the jury as the basis for the lands embraced in the Daly selections. Sparks was a witness for the plaintiff on the trial. He testified that he had lost his field book, and that he had no estimates made by him of the timber in 1900; that he made his report to McLaughlin, the agent of the defendant. . McLaughlin was called as a witness for the defendant, and testified that they had received estimates from Sparks for certain tracts of land, but did not know what had become of them. Sparks testified as to estimates made by him in 1906. The witness Vogel who was called by the plaintiff testified to estimates made by him in the year 1900 of the timber on the Daly selections. He stated that the average was 400,000 feet to each 40-acre tract. The estimates made by the witness appear to have been made about the same time as the first estimate made by Sparks, and, as far as appears from the record, was the best evidence available as to the timber on these sections in the year 1900 when the contract was entered into between the plaintiff and defendant. We see no error in admitting this testimony or in submitting it to the jury with respect to the Daly selections.

It will not be necessary to discuss the remaining assignments of error. The questions involved are substantially the same as those we have been considering, or relate to questions of fact submitted to the jury by the court with proper instructions.

The judgment of the Circuit Court is affirmed.